UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN O'CONNOR #180229,

       Plaintiffs,                        Hon. Robert J. Jonker

v.                                          Case No. 1:18-cv-977

DAVID LEACH,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

      This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 9). Plaintiff initiated this action against David Leach, the former Special Activities Coordinator for the Michigan Department of Corrections (MDOC). Plaintiff alleges that Leach unlawfully denied his request to participate in the MDOC's kosher meal program. Defendant Leach now moves for summary judgment. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be granted and this matter terminated.

## SUMMARY JUDGMENT STANDARD

      Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy his burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party

demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Ibid.* The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

In his complaint, Plaintiff does not articulate the precise nature of his claim or the authority on which it is based. Instead, Plaintiff merely states that he "is requesting to be placed on the religious diet line." In response to the present motion, however, Plaintiff asserts that he is asserting this action under both the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). As this is not inconsistent with the contents of Plaintiff's pro se complaint, the Court will interpret Plaintiff's allegations as asserting claims under both provisions.

A.  First Amendment

As the Supreme Court has observed, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). But, "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations," *Wolfish*, 441 U.S. at 545, as operating a prison is a difficult task requiring

"expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

Accordingly, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

With respect to which party bears the burden concerning the *Turner* analysis, the Supreme Court has held that "[t]he burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S.

126, 132 (2003). This statement clearly places on the prisoner the burden as to the last three *Turner* factors, but says nothing as to which party bears the burden as to the initial factor. As subsequent courts have concluded, the burden to articulate the rationale for a challenged action must rest with prison officials. As the Sixth Circuit observed:

> We note that while the burden is on the prisoner to disprove the validity of the regulation at issue . . . Defendants must still articulate their interest in the regulation . . . Otherwise, a prisoner would be forced to hypothesize any number of potential legitimate penological interests and then disprove a reasonable relationship between each and the regulation at issue.

*Figel v. Overton*, 121 Fed. Appx. 642, 646 n.2 (6th Cir., Feb. 4, 2005) (internal citations omitted); *see also*, *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012) ("the prison has the burden of demonstrating the First *Turner* Factor"). With respect to the *Turner* factors, therefore, Defendant bears the initial burden to articulate a valid, rational connection between the challenged action and the legitimate governmental interest which motivated such. This burden is "slight, and in certain instances, the connection may be a matter of common sense." *Johnson*, 669 F.3d at 156.

In support of his motion for summary judgment, Defendant Leach has submitted an affidavit in which he asserts that he made the decision to deny Plaintiff's request to participate in the kosher meal program. (ECF No. 10 at PageID.88-92). Leach asserts that his decision was premised, in part, on Plaintiff's contemporaneous purchases of non-kosher food items. (*Id.* at PageID.92, 95-96).

-6-

Plaintiff submitted his kosher meal plan request on February 11, 2018. (*Id.* at PageID.57). Plaintiff does not dispute that, on February 27, 2018, and again on March 27, 2018, he ordered significant quantities of non-kosher food items. (*Id.* at PageID.95-96). He asserts, however, that he did not consume these items, but instead purchased such to use as barter with other prisoners in return for kosher food items.

Even if true, such fails to advance Plaintiff's position. First, Plaintiff has failed to present any evidence that Defendant was aware that Plaintiff was not consuming the food items in question. Moreover, even had Leach been aware that Plaintiff was purchasing non-kosher food for trade rather than consumption, such still constitutes a legitimate basis for denying Plaintiff's request to participate in a kosher meal program. *See, e.g., Berryman v. Granholm*, 343 Fed. Appx. 1, 6 (6th Cir., Aug. 12, 2009).

Prison officials have a legitimate penological interest in controlling the cost of special religious diets. *See, e.g., Green v. Tudor*, 685 F.Supp.2d 678, 698 (W.D. Mich. 2010) (recognizing that the State of Michigan "expends significant financial and administrative resources" providing prisoners with religious diets that are "expensive, diverting resources from other penological goals"). It is reasonable for prison officials to deny special religious diets to prisoners who consume or purchase food which is inconsistent with the requested religious diet. *See Berryman*, 343 Fed. Appx. at 6.

Prison officials likewise have a legitimate interest in "maintaining discipline within the prison." *Ibid*. Permitting a prisoner to participate in a religious diet program when he is consuming or purchasing food in violation of the tenets of his stated religion could negatively impact prison security as such could cause resentment among

-7-

prisoners who adhere to their faith's dietary restrictions. In sum, Defendant has established that there exists a valid, rational connection between his actions and the legitimate governmental interest put forward to justify such.

The remaining Turner factors likewise weigh in Defendant's favor. Defendant Leach asserts, and Plaintiff concedes, that prisoners can order kosher foods items from the prisoner store. (ECF No. 10 at PageID.66, 92). There is also no evidence that Plaintiff is unable to re-apply in the future to participate in the kosher meal program. In sum, Plaintiff's First Amendment right to freely exercise his religion was not violated by Defendant Leach's decision not to allow Plaintiff to participate in the kosher meal program. Accordingly, the undersigned recommends that Defendant Leach is entitled to summary judgment as to Plaintiff's First Amendment claim.

### B. RLUIPA

RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). RLUIPA does not define the phrase "substantial burden." Nonetheless, courts have concluded that a "burden" on religious exercise is "substantial" only where it places on the individual "substantial pressure" to "modify his behavior and to violate his beliefs" or "effectively bars" the individual from exercising his religion. *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014); *see also*, *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise). Moreover, a burden is less than

"substantial" where it merely results in an "inconvenience" on religious exercise. *See, e.g., Livingston Christian Schools v. Genoa Charter Township*, 858 F.3d 996, 1003 (6th Cir. 2017).

Plaintiff bears the burden to establish that his ability to exercise his religion has been substantially burdened. *See Kaufman v. Schneiter*, 474 F.Supp.2d 1014, 1025 (W.D. Wis. 2007). Removal from a kosher meal program or denial of participation in such does not constitute a substantial burden unless the removal or denial is *permanent*. *See, e.g., Miles v. Michigan Department of Corrections*, 2019 WL 5273955 at *8 (W.D. Mich., Aug. 1, 2019). As already noted, Plaintiff has presented no evidence that the decision denying his request for kosher meals is permanent or that he is otherwise prohibited from re-applying for kosher meals in the future.

Because Plaintiff cannot establish that his ability to exercise his religion has been substantially burdened, the undersigned recommends that Defendant Leach is entitled to summary judgment as to Plaintiff's RLUIPA claim.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendant's Motion for Summary Judgment, (ECF No. 9), be granted and this matter terminated. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                                    Respectfully submitted,

Date: January 27, 2020                      /s/ Phillip J. Green
                                                            PHILLIP J. GREEN
                                                            United States Magistrate Judge